IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**HORACE J. GRIFFIN,**

    **Plaintiff,**

    v.                                                                 Case No. 03-cv-061-DRH

**BETSY SPILLER, CAPTAIN LYERIA,
GUY D. PIERCE, and COUNSELOR
GRIFFIN,**

    **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

Before the Court is the Motion for Summary Judgment filed by Defendants Guy D. Pierce, Douglas Lyerla, Betsy Spiller, and Vickie Griffin on September 11, 2006 (Doc. 78). For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

On February 3, 2003, Plaintiff Horace Griffin, an inmate in the Illinois Department of Corrections, filed this *pro se* action against ten prison officials alleging deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 1). On March 22, 2004, Plaintiff filed an amended complaint. On April 8, 2005, this Court conducted a preliminary review of the amended complaint under 28 U.S.C. § 1915A, and found that Plaintiff had stated a claim against Defendants Spiller, Lyerla, Pierce, and Griffin for failing to protect him from assaults by other inmates by removing him

from or denying him protective custody status at Pontiac, Menard, and Lawrence Correctional Centers (Doc. 17).

Now pending before the Court is Defendants Pierce, Lyerla, Spiller, and Griffin's Motion for Summary Judgment. Defendants argue that Plaintiff is not entitled to relief under the Eighth Amendment because he has not demonstrated any actual injuries from the alleged assaults by other inmates. Specifically, Defendants argue that Plaintiff's medical records from around the time of each alleged assault do not show that Plaintiff complained of any injuries. Defendants argue that Plaintiff's allegations that he experienced bruising, swelling, cuts, and bleeding, from these assaults are insufficient injuries to establish an Eighth Amendment violation. Defendants further argue that they are not liable for any constitutional violations that might have occurred at Pontiac Correctional Center because they were not employed at that facility during the time, March 2002, when Plaintiff alleges his constitutional rights were violated. Additionally, Defendants argue that they are entitled to qualified immunity.

In response, Plaintiff argues that Defendants were aware that he had previously been housed in protective custody prior to his transfer to Pontiac, and subsequently Menard and Lawrence, but removed him from protective custody status without his consent and without a hearing, thereby subjecting him to a substantial risk of harm from enemy inmates. Further, Plaintiff argues that Defendants were aware of the substantial risk to his safety, but did not act to alleviate that risk.

The undisputed facts indicate that Plaintiff was in protective custody at

Pontiac Correctional Center from January 28 to April 8, 2002 (Def. Exh. 1 (Griffin Affidavit), p. 4). On April 8, 2002, he was placed in segregation after being found guilty in a disciplinary matter (Def. Exh. 1, p. 5). Upon his release from segregation, he was not returned to protective custody (Def. Exh. 1, p. 7). It is undisputed that none of the Defendants were employed at Pontiac Correctional Center during this time period (Def. Exh. 1, pp. 9, 21-22).

On July 10, 2002, Plaintiff was transferred to Menard Correctional Center and was placed in the general population (Def. Exh. 1, pp. 9-10). Twice between July 13 and 16, 2002, Plaintiff fought with his cellmate and received bruising, scratches, and a "busted" lip and nose (Def. Exh. 1, p. 10). Plaintiff was beaten by another inmate at Menard on November 19, 2002 (Def. Exh. 1, p. 18), and by yet another inmate in December 2002 (Def. Exh. 1, p. 19). Defendant Spiller worked as a case work supervisor and Defendant Lyerla worked as a Correctional Captain at Menard Correctional Center during the time period referenced in the complaint (Def. Exh. 1, pp. 17, 20).

Plaintiff fought with an inmate at Lawrence Correctional Center on May 9, 2003, and he was issued a disciplinary ticket for participating in this altercation (Def. Exh. 1, p. 23). He received injuries in that fight including puffiness and swelling in his right jaw (Def. Exh. 1, pp. 16-17). Defendant Pierce was the warden and Defendant Griffin a counselor at Lawrence Correctional Center during the time period indicated in Plaintiff's complaint (Def. Exh. 1, pp. 80, 83).

Defendants argue that an affidavit from medical personnel and copies

of a few pages of Plaintiff's medical records support their contention that Plaintiff received no medical treatment for injuries consistent with fighting on or around the dates the fights occurred in July 2002, November 2002, December 2002, and May 2003 (Def. Ex. 2). Plaintiff disputes those assertions. The pages of medical records submitted by Defendants show that Plaintiff was seen by medical personnel on July 15, 2002, for nasal congestion, sinus tenderness, and headache (Def. Exh. 2, p. 2). On July 16, 2002, he received an x-ray (Def. Exh. 2, p. 4), but the record does not state for what purpose. On December 16, 2002, Plaintiff saw medical personnel for weakness, cough, and chest pain (Def. Exh. 2, p. 6).

In response, Plaintiff submits evidence that he informed prison officials that he was improperly removed from protective custody and placed at Menard with an inmate who later assaulted him. In grievances, he sought placement in protective custody. In one grievance, Plaintiff stated that he had been threatened while in the general population (Pl. Exh. B, pp. 4-5). In another grievance Plaintiff stated, "I'm in fear of my life, and you know I have enemies here." (Def. Exh. B, pp. 13-14). There is conflicting evidence whether Plaintiff was asked on August 26, 2002, by Defendants Spiller and Lyerla whether he felt he needed to be placed in protective custody. Plaintiff told Defendant Spiller "not to worry about it," but that a lawsuit would follow (Def. Exh. 1, p. 11). Plaintiff's response in deposition corroborates this exchange. Plaintiff states, however, that he should have been in protective custody during the entire period in question because he never "signed out" under prison rules and regulations (Def. Exh. 1, p. 11).

Plaintiff also submits evidence, via affidavit, that he received injuries in July 2002 (bruising, scratches, "a busted lip and a busted nose," a cut to the eye, and swelling), and November 2002 (sexual assault). He avers that his injuries were treated each time by medical personnel, and should have been included in his medical records (Pl. Exh. D).

## II. Summary Judgment

Pursuant to **Federal Rule of Civil Procedure 56(c)**, summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ***Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 497 (7th Cir. 1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Company*, 16 F.3d 832, 836 (7th Cir. 1994).** The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999).** A fact is material if it is outcome determinative under applicable law. ***Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999); *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997).** The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not sufficient to demonstrate that a genuine issue of material fact exists. ***Weeks v. Samsung Heavy Industries Co., Ltd.*, 126**

**F.3d 926, 933 (7th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).**

Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons, Incorporated*, **105 F.3d 343, 346 (7th Cir. 1997);** *Lawshe v. Simpson*, **16 F.3d 1475, 1478 (7th Cir. 1994);** *Dempsey*, **16 F.3d at 836.** Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, **21 F.3d 146, 148 (7th Cir. 1994). See also,** *Miller*, **168 F.3d at 312;** *Plair*, **105 F.3d at 347;** *Hong v. Children's Memorial Hospital*, **993 F.2d 1257, 1261 (7th Cir. 1993);** *Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, **991 F.2d 1249, 1258 (7th Cir. 1993).**

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250.  *See also, Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Haefling*, 169 F.3d at 497-98; *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997); *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997).

### III.  Analysis

As an initial matter, the Court finds that it is undisputed that none of the remaining defendants were employed at Pontiac Correctional Center during the time period referenced in Plaintiff's complaint.  Thus, Plaintiff's claims regarding any injury suffered at Pontiac must be dismissed from the action as Defendants cannot be held liable for constitutional violations arising therefrom.  Accordingly, summary judgment is **GRANTED** in favor of Defendants as to the claims involving injury suffered at Pontiac Correctional Center.

Prison officials have a duty under the cruel and unusual punishments clause of the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  But not "every injury inflicted by one inmate on another" violates the Eighth Amendment prohibition of cruel and unusual punishment.  *Luttrell v. Nickel*, 129 F.3d 933, 935 (7th Cir. 1997).

To succeed on a failure-to-protect claim, an inmate must first

demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm." ***Farmer*, 511 U.S. at 834.** A beating of one inmate by another "clearly constitutes serious harm." ***Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).** Second, he must show that prison officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. ***Farmer*, 511 U.S. at 838-39.** As explained in *Farmer*, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **511 U.S. at 837.** A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." ***Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)).** The prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." ***Farmer*, 511 U.S. at 847.** "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." ***Id.* at 838.**

Under the first prong of the inquiry, Defendants argue that Plaintiff

cannot demonstrate a substantial risk of serious harm existed. In support, they offer medical records indicating that Plaintiff did not complain to medical personnel of injuries consistent with assault on the dates the alleged assaults occurred. Based upon these records, they argue that Plaintiff's injuries were either non-existent or too minor to sufficiently demonstrate that he was exposed to a substantial risk of serious harm, and therefore he has not demonstrated a violation of the Eighth Amendment. They support their legal argument with two Seventh Circuit cases, **Doe v. Welborn, 110 F.3d 520, 523 (7th Cir. 1997) (plaintiff in section 1983 action must show proof of actual injury) and** *Babcock v. White*, **102 F.3d 267, 271 (7th Cir. 1996) (plaintiff must suffer cognizable legal harm caused by defendant's breach of duty owed to plaintiff)**, which they argue stand for the principle that a minimal showing of injury by a prisoner renders unavailable a failure to protect claim under the Eighth Amendment.

*Babcock* and *Doe* are distinguishable from the case at bar because they both involved prisoner plaintiffs whose claims for relief were based only upon psychological injuries. In formulating the Eighth Amendment issue in *Babcock*, the Seventh Circuit stated, "[t]his case squarely presents the question whether or not a federal prisoner who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a *Bivens* claim for money damages based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner." **102 F.3d at 270.** The court held that

Babcock was not entitled to damages for his psychological harm because he was never physically injured. The court stated, "[h]owever legitimate Babcock's fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.* **at 272.** The court concluded: "Simply put, Babcock alleges, not a 'failure to prevent harm,' but a failure to prevent exposure to the risk of harm. This does not entitle Babcock to monetary compensation." *Id.* **(citing** *Farmer***, 511 U.S. at 834).**

Similarly, in *Doe*, the Seventh Circuit clearly stated that Doe's claims did not involve any physical assault. Doe argued, instead, that "his compensable damages [were] psychological harm suffered from living in constant fear of assault." **110 F.3d at 523.** The Court held, based on *Babcock*, that Doe's allegations of psychological harm would not support a claim for damages under the Eighth Amendment. *Id.* **at 524.**

Plaintiff here does not allege psychological injuries. He alleges physical ones, specifically, physical injuries consistent with fighting: bruising, swelling, cuts, and bleeding. Thus, *Babcock* and *Doe* are inapposite. Defendants argue that injuries such as bruising, swelling, a "busted" lip and nose, a cut to the eye, and bleeding are not sufficiently serious to rise to the level of an Eighth Amendment violation because such injuries do not constitute "serious harm." In support of this argument, Defendants present Plaintiff's medical records indicating that Plaintiff did

not complain to medical personnel of injuries. Thus, they argue his injuries did not exist or at the very least were too minor to note. In response, Plaintiff presents evidence that he did indeed receive injuries in the altercations at Menard and Lawrence Correctional Centers, and furthermore that those injuries were treated by prison medical personnel and thus should have been reflected in his medical records. This is sufficient to demonstrate the existence of a genuine issue of material fact regarding his injuries under the first prong of the two-part inquiry.

Defendants' discussion of the Seventh Circuit's two-part inquiry is limited to this argument regarding the extent of Plaintiff's injuries. Defendants do not address other aspects of the objective inquiry such as whether Plaintiff was housed near enemies, or whether he had been threatened with harm from other inmates. In other words, they do not thoroughly assess the risk of harm to which Plaintiff may have been exposed by his removal from protective custody. As to the second prong of the inquiry, the subjective determination, Defendants argue that Plaintiff's injuries are not "sufficiently serious to constitute deliberate indifference, even if Defendants failed to protect him from those injuries." (Doc. 79, p. 12). They thus assume that because Plaintiff's injuries do not demonstrate serious harm, then Defendants could not have been deliberately indifferent to any potential risk. Because Plaintiff has demonstrated with evidence admissible under the rule that he did suffer injuries that were treated by medical personnel, there is a genuine issue of material fact regarding whether Plaintiff was exposed to a substantial risk of serious harm when he was removed from and not returned to protective custody.

These issues of fact preclude summary judgment in favor of Defendants regarding injuries suffered at Menard and Lawrence Correctional Centers.

**<u>Qualified Immunity</u>**

Defendants argue that they are entitled to qualified immunity. In so determining, the Court must consider two questions: 1. "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, if the answer is yes, 2. was "the right clearly established?" ***Saucier v. Katz*, 533 U.S. 194, 201 (2001);** *See also* ***Green v. Butler*, 420 F.3d 689, 700-701 (7th Cir. 2005).** With respect to the first question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ***Saucier*, 533 U.S. at 202;** ***Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (2005) ("[T]he case law must be 'clearly established' at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful.");** ***Spiegla v. Hull*, 371 F.3d 928, 940 (7th Cir. 2004).**

As this matter is now before the Court on a motion for summary judgment, the issue of whether the Defendants are entitled to qualified immunity can be determined on the undisputed facts before the Court. To the extent that there are disputed facts, those will be considered in a light most favorable to the Plaintiff. ***See***

*generally, Board v. Farnham*, **394 F.3d 469, 476 (7th Cir. 2005)**. As shown above, there are disputed questions of fact remaining regarding whether Defendants' alleged conduct violated Plaintiff's constitutional rights. Accordingly, summary judgment would be inappropriate at this time based upon Defendants' qualified immunity argument. *Spiegla*, **371 F.3d at 940 (stating that "before determining whether a right was clearly established, courts must first determine whether, taking the facts in the light most favorable to the plaintiff, the official violated a constitutional right")**.

### IV. Conclusion

Accordingly, the Court **GRANTS** in part and **DENIES** in part Defendants Guy D. Pierce, Douglas Lyerla, Betsy Spiller, and Vickie Griffin's Motion for Summary Judgment (Doc. 78). Specifically, summary judgment is **GRANTED** as to Plaintiff's claims of injury occurring at Pontiac Correctional Center. Summary Judgment is **DENIED** in all other respects.

**IT IS SO ORDERED.**

**DATED: September 24, 2007**

/s/     DavidRHerndon
**UNITED STATES DISTRICT JUDGE**